IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

MELANIE L. WISE,                                        CV. 09-6312-MA

                    Plaintiff,                  OPINION AND ORDER

        v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

                    Defendant.

KATHRYN TASSINARI
BRENT WELLS
HARDER, WELLS, BARON,& MANNING, P.C.
474 Willamette, Suite 200
Eugene, OR 97401

        Attorneys for Plaintiff

DWIGHT C. HOLTON
United States Attorney
District of Oregon
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902

DAVID BURDETT
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 221A
Seattle, WA 98104-7075

        Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Melanie L. Wise brings this action for judicial review of a final decision of the Commissioner of Social Security denying her application for supplemental security income (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).  For the reasons that follow, I AFFIRM the final decision of the Commissioner.

### PROCEDURAL BACKGROUND

Plaintiff filed for SSI benefits on December 6, 2005, alleging disability beginning on July 9, 2004.  Plaintiff's application was denied initially and on reconsideration.  Plaintiff requested a hearing, and appeared and testified before an administrative law judge (ALJ) on October 2, 2008.  A supplemental hearing was held on June 4, 2009, at which plaintiff again appeared and testified.  The ALJ issued an unfavorable decision on July 19, 2009.  The Appeals Council denied plaintiff's request for review on September 15, 2009.  Accordingly, the ALJ's decision became the final decision of the agency.

### FACTUAL BACKGROUND

Plaintiff was 34 years old at the time she filed her SSI benefits application, and 38 years old at the time of the ALJ's decision.  Plaintiff has completed eight grades of school, and has not earned a GED.  Plaintiff has worked as a housekeeper, a home

health care provider, a gas station attendant, and an assembly line worker.  However, none of plaintiff's previous sporadic employment satisfies the past relevant work threshold.  20 C.F.R. § 416.968. Plaintiff alleges a disability beginning July 9, 2004, due to cervical spine, thoracic spine and lumbar spine degenerative disc disease; right shoulder rotator cuff tear; polysubstance abuse; and a personality disorder.  Plaintiff asserts that she stopped working because she was injured in a car accident on July 9, 2004.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled.  Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920.  Each step is potentially dispositive.  The claimant bears the burden of proof at steps one through four.  See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  The burden shifts to the Commissioner at step five to show that a significant number of jobs exist in the national economy that the claimant can perform.  Yuckert, 482 U.S. at 141-42.

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity. See 20 C.F.R. §§ 416.920(b), 416.971 et seq.

At step two, the ALJ found that plaintiff had the following medically determinable severe impairments:  cervical spine, thoracic spine and lumbar spine degenerative disc disease; right

shoulder rotator cuff tear; polysubstance abuse; and personality disorder, not otherwise specified. See 20 C.F.R. § 416.920(c).

At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. See 20 C.F.R. §§ 416.920(d), 416.925, 416.926.

The ALJ assessed plaintiff with a residual functional capacity (RFC) to perform light work, except that she is limited to only occasionally stoop, crouch, crawl or climb ladders, ropes, and scaffolds; to frequently balance, kneel, and climb ramps and stairs; to occasionally reach overhead bilaterally; and to avoid all exposure to workplace hazards. The ALJ determined that plaintiff is capable of unskilled work with simple one to three step tasks and is to have only occasional contact with the public. See 20 C.F.R. §§ 416.927, 416.929.

At step four, the ALJ found plaintiff has no past relevant work. See 20 C.F.R. § 416.965.

At step five, the ALJ found that considering her age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that plaintiff can perform. See 20 C.F.R. §§ 416.960(c), 416.966. Accordingly, the ALJ concluded that plaintiff is not disabled within the meaning of the Act.

////

## ISSUES ON REVIEW

Plaintiff contends that the ALJ made several errors: (1) improperly discrediting plaintiff's testimony; (2) improperly discrediting Dr. Whitehead's opinion; (3) improperly discrediting Dr. Ugalde's opinion; (4) improperly rejecting Ms. Miller's opinion; (5) improperly discounting lay witness testimony; and (6) failing to demonstrate that plaintiff retains the ability to perform other work in the national economy.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.; Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009). The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Andrews, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the

Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001); Batson, 359 F.3d at 1193.

**DISCUSSION**

I. **Plaintiff's Credibility.**

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. 20 C.F.R. §§ 404.1529. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991)(en banc); Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996). At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1166 (9th Cir. 2008); Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. Tommasetti, 533 F.3d 1035, 1039 (9th Cir. 2008); Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995). Factors the ALJ may consider when making such credibility

determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. Tommasetti, 533 F.3d at 1039.

At the October 2, 2008 hearing, plaintiff admitted to an extensive history of alcohol and drug abuse. Plaintiff testified that she drinks about a fifth of alcohol every three or four days, and that she had consumed alcohol prior to the hearing that morning. Later in the hearing, plaintiff testified that she drinks approximately one pint of hard alcohol every two days. Plaintiff further testified that she uses marijuana three or four times per week, and that she had not advised her health care providers concerning her alcohol or drug use. Plaintiff added that she uses marijuana for pain and drinks alcohol because she is depressed.

Plaintiff also admitted to using methamphetamine some six months earlier when testifying at the October 2008 hearing. Plaintiff stated that prior to the July 9, 2004 accident, she had been using methamphetamine every day. However, plaintiff claimed that she quit using methamphetamine the day she started working as a housekeeper — coincidentally, the date of the accident. Plaintiff testified that following the July 9, 2004 accident, she again used methamphetamine, but could not recall how frequently.

Plaintiff further testified at the October 2008 hearing that she sleeps most of the day due to the pain in her back, neck and shoulders. Plaintiff stated that she is only able to do chores or garden for about 15 minutes, then needs to stop and lie down because of the pain. Plaintiff testified that she was taking 80 milligrams of methadone per day for pain, and that the methadone is helpful. Plaintiff stated that she takes Paxil for depression, but that the Paxil is not helpful. Plaintiff testified that she is able to ride as a passenger in the car for short distances and that she can take her dog out for a walk.

At the supplemental hearing on July 4, 2009, plaintiff testified that she last consumed alcohol on November 9, 2008 and that she had reduced her methadone to 30 milligrams per day. Plaintiff also stated that she was undergoing some physical therapy.

The ALJ concluded that plaintiff has medically determinable impairments that could reasonably be expected to produce some symptoms, but that plaintiff's statements concerning the intensity, persistence, and limiting effects were not entirely credible.

Contrary to plaintiff's assertion, the ALJ pointed to specific record evidence undermining her subjective complaints. First, the ALJ found plaintiff to be less than forthcoming with her treating physicians and nurse practitioner about her drug and alcohol use and abuse, and the ALJ properly discredited plaintiff on that

basis.  The ALJ discussed that plaintiff had "failed to advise her treating sources that she was using multiple substances, including alcohol, methamphetamines and marijuana, throughout the time she was receiving narcotic and psychotropic medications." (TR 71.) Continuing, the ALJ detailed that plaintiff did not disclose her alcohol use to her treating health care providers until *after* the October 2, 2008 hearing, and then minimized her usage.  The ALJ further discussed that plaintiff made concerted efforts to reduce her methadone intake and reportedly stopped drinking *after* the October 2, 2008 hearing.

Plaintiff complains that the ALJ should not discredit her testimony because the ALJ concluded that her polysubstance abuse was not "material to the issue of disability." (Tr. 70.)  I disagree.  An ALJ may rely on ordinary techniques of credibility evaluation, including lack of candor and inconsistent reports of alcohol or drug use as issues of credibility.  Therefore, I conclude that the ALJ could appropriately discredit claimant for failing to disclose her alcohol and drug use to her treating physicians, and inconsistently reporting that use. See Verduzzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999)(inconsistent statements about alcohol use may be used to discredit testimony); Gardner v. Astrue, 2009 WL 1505303, *4 (D. Or. May 27, 2009)(ALJ appropriately discredited claimant for inconsistently reporting alcohol use and abuse to treating physicians).

Second, the ALJ found that plaintiff's description of debilitating pain was inconsistent with her medical record, and properly discounted her testimony. Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007), cert. denied, 522 U.S. 1141 (2008). The ALJ noted that plaintiff's complaints of back and shoulder pain arose following the July 9, 2004 motor vehicle accident. The ALJ detailed plaintiff's physical therapy records from July 2004, which indicated that her cervical range of motion was 50 percent, and right rotation at 25 percent. And, the ALJ noted that in July 2004, plaintiff asserted that she could not sleep or lift or carry objects due to her significant pain. The ALJ described that plaintiff's medical records indicated improvement in her symptoms in August 2004, and again in September 2004. The ALJ explained that plaintiff's cervical range of motion had improved to 80 percent, except left rotation was at 75 percent by September 2004. The ALJ further detailed a report from Michael G. Ryan, M.D., indicating that plaintiff's cervical and shoulder ranges of motion were essentially normal. The ALJ noted that despite the apparent improvement in plaintiff's symptoms, she did not return to physical therapy for a year. (Tr. 71.)

The ALJ also detailed several medical exams which revealed inconsistent results. For instance, the ALJ noted that plaintiff's records demonstrated that in April 2009, plaintiff had difficulty with toe walking and was unable to heel walk. However, the ALJ

described that plaintiff had no difficulty performing heel walking on two other occasions. The ALJ also explained inconsistent results from the straight leg raise, noting that plaintiff had a negative result in August 2004, November 2005 and September 2008, and a mildly positive straight leg raise in November 2005. And, the ALJ noted that plaintiff had an antalgic gait[1] which was observed in July 2004 and November 2005, but a nonantalgic gait was observed in August 2004, August 2005, December 2005, September 2008 and December 2008. When the claimant's own medical record undercuts his assertions, the ALJ may rely on that contradiction to discredit the claimant. Parra, 481 F.3d at 750-51; Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999).

Third, the ALJ appropriately discredited plaintiff based on her lack of consistent treatment or lack of treatment. Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). For example, the ALJ noted that in July 2004, shortly after the accident, plaintiff had been prescribed steroids, but did not take them. (Tr. 70, 468.) And, the ALJ noted that plaintiff's then treating physician recommended exercises, but plaintiff left the office without instructions for the exercises, and noted that she had missed multiple appointments with that physician. (Tr. 368.) The ALJ also

---

[1] An antalgic gait is defined as a limp or assumed gait to lessen pain. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 90 (28th ed. 1994).

noted that Dr. Ryan had observed that plaintiff was taking twice as much Norco as prescribed, and that his office would no longer prescribe pain medications for her due to missed appointments. The ALJ noted that plaintiff did not reveal to her treating nurse practitioner that the anti-anxiety medication which had been prescribed to her for years did not have a beneficial impact, yet plaintiff continued to use it.

The ALJ also cited a gap in plaintiff's treatment of almost two and a half years.  The ALJ noted that plaintiff saw Nancy Maloney, M.D., in November and December 2005, but then did not see anyone (other than her nurse practitioner for medication refills) until seeing Mark G. Belza in April 2008.  Additionally, the ALJ noted that plaintiff was scheduled for shoulder surgery in April 2005 to repair her rotator cuff, however, at the October 2008 hearing, plaintiff admitted that she missed that surgical appointment.  The ALJ also detailed that plaintiff missed an appointment for a cervical MRI in October 2004.  (Tr. 368.)  The ALJ could discount plaintiff's testimony on this basis.  Bunnell, 947 F.2d at 346 (unexplained, or inadequately explained, failure to follow a prescribed course of treatment is a relevant factor in assessing credibility).

In an effort to justify her lack of consistent treatment and varied results on medical exams, plaintiff *now* asserts that such inconsistencies are the result of "waxing and waning sypmtoms."

Plaintiff's contention is unconvincing. Plaintiff did not testify at either the initial or supplemental hearing that her symptoms have waxed and waned, and offered no explanation for the missed appointments. Moreover, plaintiff's medical records do not indicate that plaintiff reported to her physicians that her symptoms have been episodic. Even if the evidence would also support the interpretation that plaintiff now urges, the court must defer to the Commissioner's decision. <u>Batson</u>, 359 F.3d at 1193; <u>Andrews</u>, 53 F.3d at 1039-40.

Lastly, the ALJ properly relied upon plaintiff's sporadic work history in assessing plaintiff's credibility. (Tr. 70.) As the ALJ discussed at the hearing, none of plaintiff's previous employment reached the significant gainful activity level, even prior to her alleged disability onset date. (Tr. 19.) As the ALJ found, plaintiff's actual employment history is inconsistent with plaintiff's primary contention–that she is unable to work due to her alleged impairments. <u>See</u> <u>Thomas</u>, 278 F.3d at 959 (claimant's spotty work history was a valid credibility consideration); <u>Goudge v. Astrue</u>, 2010 WL 4007538, *3 (D. Or. Oct. 12, 2010)(discrediting claimant for sporadic work history).

In short, the ALJ detailed numerous discrepancies in plaintiff's medical record, inconsistent reports about drug and alcohol use, lack of consistent treatment, and a sporadic work history, which are backed by substantial evidence in the record.

When taken together, the ALJ has provided has clear and convincing reasons for the adverse credibility determination, and it will not be disturbed. Orteza, 50 F.3d at 750.

## II.  **Physician's Opinion.**

To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons for doing so. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. Bayliss, 427 F.3d at 1216. An ALJ can meet this burden by providing a detailed summary of the facts and conflicting medical evidence, stating his own interpretation of that evidence, and making findings. Tommasetti, 533 F.3d at 1041; Carmickle, 533 F.3d at 1164; Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings, or is brief or conclusory. Magallanes, 881 F.2d at 751. An ALJ also may discount a physician's opinion that is based on a claimant's discredited subjective complaints. Tommasetti, 533 F.3d at 1040.

### A.  **Dr. Ugalde.**

Plaintiff asserts that the ALJ failed to properly credit the opinion of Vivian Ugalde, M.D. According to plaintiff, the ALJ

14 – OPINION AND ORDER

should have credited Dr. Ugalde's opinion that a positive bone scan was capable of causing plaintiff pain, and that plaintiff has not yet received appropriate treatment for her chronic pain.    The Commissioner asserts that the ALJ adequately supported the partial rejection of that portion of Dr. Ugalde's opinion which was contained in a letter prepared by plaintiff's attorney.

I disagree with plaintiff's suggestion that the ALJ was required to provide clear and convincing reasons for discounting Dr. Ugalde's opinion.    The ALJ provided an extensive four page analysis of plaintiff's physical impairments, including analysis of the conflicting records from numerous physicians and health care providers.    For example, the ALJ provided a detailed discussion of the reports from Dr. Ryan, who observed essentially normal cervical and shoulder ranges of motion in October 2004, shortly after plaintiff's alleged onset of disability.    The ALJ discussed that Dr. Ryan had found a positive shoulder impingement sign in October of 2004, but a negative impingement sign in January 2005.    The ALJ also discussed that in January of 2005, Dr. Ryan did not recommend shoulder surgery due to missed appointments and would not prescribe her pain medication.    (Tr. 71.)    The ALJ further discussed plaintiff's missed surgical appointment. (<u>Id.</u>)

Additionally, the ALJ reviewed at length a Physical Capacity Examination conducted on January 13, 2009.    That evaluation found plaintiff capable of performing work at the sedentary level,

however, as the ALJ discussed, the results were unreliable due to plaintiff's "self-limiting" on 78 percent of the examination. (Tr. 73, 595).  The ALJ noted that plaintiff's physical therapy session in April of 2009 revealed that plaintiff performed a sit to stand exercise with great effort, but later on, plaintiff reached for her jacket and rose to standing with ease.  (Tr. 72, 625.)

And, the ALJ examined the opinions provided by non-examining consulting physicians Mary Ann Westfall, M.D. and Linda Jensen, M.D., and gave them great weight. (Tr. 74.)  Dr. Westfall performed a physical Residual Capacity Assessment and determined that plaintiff was capable of performing light exertion work with occasional postural limitations, as described by the ALJ in plaintiff's RFC.  Dr. Jensen affirmed the assessment of Dr. Westfall.  In short, Dr. Ugalde's opinion is not uncontroverted, and the ALJ adequately detailed the facts and conflicting medical evidence and offered findings.  Tommasetti, 533 F.3d at 1041.

Here, the ALJ clearly examined the treatment notes from plaintiff's two visits with Dr. Ugalde on December 18, 2009, and April 24, 2009. (Tr. 71-72.)  The ALJ noted that plaintiff had been referred to Dr. Ugalde for pain management, and that plaintiff complained to Dr. Ugalde of pain, weakness and numbing, swelling and cramping in her arms and legs.  However, the ALJ discussed that Dr. Ugalde's records disclosed that plaintiff's "strength was found to be normal with some give-way on exam."  The ALJ also detailed

that Dr. Ugalde recommended that plaintiff wean off methadone and stop taking Valium.

However, the ALJ rejected Dr. Ugalde's "opinion" that was contained in a May 29, 2009 letter prepared by plaintiff's attorney. (Tr. 73-74, 638.) The ALJ discussed that the letter provides that plaintiff suffers "chronic pain from spondylosis and inflammation of her facet joints and that Dr. Ugalde recommended facet joint injections which had not been approved by [plaintiff's] insurance." (Tr. 73.) The ALJ provided the following analysis:

> This "opinion" is not given any weight as it fails to address the claimant's maximum abilities to perform work related activities and the assertion that the claimant has not received appropriate treatment is misleading. She has received several forms of treatment including physical therapy, the use of a TENS unit and multiple pain medications including long acting narcotics. While it is possible that [plaintiff] could benefit from the recommended treatment, the inability to work without some degree of pain is not a legitimate basis for a finding of disability and the residual functional capacity arrived herein accommodates [plaintiff's] reasonably expected pain by limiting her to light exertion work with additional postural limitations. (Tr. 74.)

In the instant case, the ALJ provided adequate reasons for partially rejecting Dr. Ugalde's opinion. As the ALJ explained, the letter appeared to memorialize a conversation between Dr. Ugalde and plaintiff's attorney. However, as the ALJ noted, the specifics of the conversation were not disclosed, and Dr. Ugalde did not elaborate on the "opinion" prepared by the attorney. See Orellana v. Astrue, 2008 WL 398834, *12-13 (E.D. Cal. Feb. 12,

17 - OPINION AND ORDER

2008), adopted by 2008 WL 659761 (E.D. Cal. Mar. 11, 2008)(rejecting an "opinion" of treating physician contained in a fill-in-the-blank form prepared by claimant's attorney). As the ALJ discussed, Dr. Ugalde's opinion that plaintiff had not received appropriate treatment for her pain was in conflict with the record as a whole, and failed to account for the various other treatments previously afforded to plaintiff. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001)(ALJ may discount opinion of treating physician if it is unsupported by objective evidence or record as a whole). Moreover, the ALJ discussed that plaintiff's reasonably expected pain as substantiated by Dr. Ugalde was accommodated by limiting plaintiff to light exertion work, with additional postural limitations.

The ALJ partially discounted Dr. Ugalde's opinion on the basis that it failed to address the claimant's maximum abilities to perform work related activities, which may not be a valid reason for rejecting the opinion. However, I conclude that in light of the other reasons provided by the ALJ for rejecting Dr. Ugalde's opinion and in light of the objective medical evidence on which the ALJ relied to reach plaintiff's residual functional capacity, any error was harmless. Carmickle, 533, F.3d at 1162-64; Batson, 359 F.3d at 1197. Accordingly, I conclude that the ALJ provided specific and legitimate reasons for the partial rejection of Dr. Ugalde's opinion.

In her reply, plaintiff asserts that Dr. Ugalde's opinion that the objective findings are capable of causing the pain plaintiff alleges should be credited. To the extent that the ALJ did not discuss that specific statement, the ALJ has adequately discussed the substance of Dr. Ugalde's opinion in other portions of the decision. Indeed, plaintiff's concern is more properly directed at the ALJ's credibility assessment. To be sure, the ALJ specifically concluded that plaintiff's impairments are capable of causing her pain, however, the ALJ concluded that the intensity, persistence, and limiting effects of those symptoms were not as severe as alleged by plaintiff. As detailed above, the ALJ provided adequate reasons for discrediting plaintiff, as well as partially rejecting Dr. Ugalde's opinion.

**B.   Dr. Whitehead.**

Plaintiff complains that the ALJ failed to properly analyze the opinion of clinical psychologist Michelle Whitehead, M.H.N.P., Ph.D., who performed a one-time psychodiagnostic evaluation of plaintiff on March 8, 2006. The examination was performed as part of Disability Determination Services. In the examination with Dr. Whitehead, plaintiff admitted to a lengthy history of drug and alcohol abuse, and indicated that she entered drug rehabilitation in 1999, but relapsed after completing the program. Plaintiff reported to Dr. Whitehead that she had been drug and alcohol free for eight months.

19 - OPINION AND ORDER

According to plaintiff, the ALJ failed to credit Dr. Whitehead's opinion that "[plaintiff] presented as a fragile woman whose personality is unstable and emotionally vulnerable aggravated by chronic pain, symptoms of depression with minimal ability to function as an adult." Plaintiff asserts that the ALJ erred in failing to fully credit Dr. Whitehead's diagnoses of "Chronic Pain due to general medical and psychological factors" and "Major Depression." And, plaintiff argues that the ALJ failed to credit Dr. Whitehead's opinion that plaintiff was only "marginally competent to manage funds."

The ALJ analyzed Dr. Whitehead's opinion as follows. To begin, the ALJ noted that the record concerning plaintiff's alleged mental impairments is quite limited. Aside from medications for depression and anxiety prescribed by Nurse Practitioner Joannie Miller, Dr. Whitehead is the only medical provider to assess plaintiff's mental impairments. The ALJ accurately noted that Dr. Whitehead was not provided with medical records and thus based the psychodiagnostic evaluation solely on plaintiff's self-reporting. Additionally, the ALJ noted that Dr. Whitehead found that plaintiff had a slow rate of speech, was capable of taking public transportation, and could use the telephone. The ALJ described that Dr. Whitehead found that plaintiff had adequate concentration and persistence, but a slow pace.

The ALJ accepted Dr. Whitehead's opinion as consistent with the other limited mental health records. The ALJ then translated Dr. Whitehead's opinion into the following concrete restrictions pertinent to her RFC:

> [plaintiff's] allegations that she has reasonable effects from [] a history of polysubstance abuse and a personality disorder, including limited concentration with an inability to perform more complex tasks and difficulty associating with others. [Plaintiff's] mental impairments are accommodated by a simple 1 to 3 step tasks and only occasional contact with the public. The affects of the claimant's medication also reduces her ability to handle more complex tasks and be exposed to hazards. (Tr. 75.)

Plaintiff argues that limiting her to occasional contact with the public does not adequately address Dr. Whitehead's finding that she is "fragile" and "unstable and emotionally vulnerable" because it fails to address whether plaintiff can respond to normal demands of the work setting, including supervision, coworkers, or changes to the work routine. I disagree.

Dr. Whitehead did not offer an opinion concerning plaintiff's abilities to respond to a work setting. Instead, those functional assessments were provided by Frank Lahman, Ph.D., who completed a Psychiatric Review Technique Form (PRFT) and a Mental Residual Functional Capacity (MRFC) Assessment. The MRFC completed by Dr. Lahman assessed that plaintiff was not significantly limited in her ability to respond appropriately to supervision, get along with co-workers, and respond to changes in the work routine. (Tr. 416.) As

the ALJ noted, Dr. Lahman's opinion was affirmed by Paul Rethinger, Ph.D.   Notably, plaintiff does not challenge Dr. Lahman or Dr. Rethingner's assessments.   See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173-74 (9th Cir. 2008).

Accordingly, I conclude that the ALJ did not err in analyzing Dr. Whitehead's opinion.

**C.   Nurse Practitioner Ms. Miller.**

Plaintiff complains that the ALJ failed to provide adequate reasons for discounting the opinion of her primary health care provider, Joannie J. Miller, Nurse Practitioner.   According to plaintiff, the ALJ failed to credit Ms. Miller's opinion that plaintiff is unable to sustain sedentary work on a full time basis and that plaintiff's disability is caused, in part, by her emotional reaction and anxiety due to her physical condition and chronic pain.  (Tr. 636.)

The ALJ thoroughly analyzed Ms. Miller's treatment notes, which spanned from July 2004 through June 2009.   The ALJ also discussed in detail a June 3, 2009 "opinion" signed by Ms. Miller and prepared by plaintiff's attorney.   In that June 3, 2009 letter, despite a June 2009 Physical Capacities Evaluation finding plaintiff capable of performing sedentary work, Ms. Miller opines that plaintiff could not sustain sedentary work on a full time basis due to plaintiff's physical and mental limitations.  (Tr. 636.)

The ALJ provided a number of reasons for rejecting Ms. Miller's opinion.  First, the ALJ appropriately discounted Ms. Miller's opinion because she is not an acceptable medical source.  See SSR 06-3p (only acceptable medical sources may establish the existence of a medically determinable impairment); See Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir.), cert. denied, 519 U.S. 881 (1996)(a nurse practitioner working on her own is not an acceptable medical source).

Second, the ALJ discussed that even if Ms. Miller were an acceptable medical source, her opinion was discounted because it was not based on objective findings.  See Bayliss, 427 F.3d at 1216 (an ALJ may discount a physician's opinion because it is unsupported by clinical findings).  The ALJ discussed that despite a lengthy relationship, plaintiff's treatment with Ms. Miller largely involved obtaining prescription pain medication and other medication refills.  As the ALJ noted, Ms. Miller's records consist mostly of information repeated from the previous visit without further analysis, findings, or diagnostic studies.

Third, the ALJ appropriately discounted Ms. Miller's opinion because it was based on plaintiff's subjective complaints.  Morgan, 169 F.3d at 602 (physician's opinion of disability premised upon a claimant's complaints which have been properly discounted may be disregarded); Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989) (same).  The ALJ discussed that plaintiff had not disclosed to Ms.

Miller that she was using multiple substances, including alcohol, methamphetamines, and marijuana, while simultaneously receiving narcotic and psychotropic medications from Ms. Miller.  The ALJ explained that it was not until shortly following the October 2008 disability hearing that plaintiff disclosed to Ms. Miller that she was using alcohol, and that plaintiff appeared to then minimize her use. (Tr. 71.)

In sum, I find no error in the ALJ's assessment of Ms. Miller's opinion.  I conclude that the ALJ provided specific and legitimate reasons, when taken together, which are supported by substantial evidence, for discounting the opinion of Ms. Miller. Tommasetti, 533 F.3d at 1041-42; Andrews, 53 F.3d at 1039-40.

### III. <u>Lay Witness Testimony.</u>

Plaintiff argues that the ALJ failed to properly credit the lay witness testimony of plaintiff's friend, Paddy McAlister. According to plaintiff, Mr. McAlister's testimony is consistent with the opinion of Dr. Whitehead, and should therefore be credited.

Lay witness testimony as to a claimant's symptoms or how an impairment affects his ability to work is competent evidence, which the ALJ must take into account.  See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).  The ALJ is required to account for competent lay witness testimony, and if he rejects it, to provide germane reasons

for doing so.  Dodrill, 12 F.3d at 919; Valentine, 574 F.3d at 694.

In this case, the ALJ clearly considered the third party report provided by Mr. McAlister.  The ALJ discussed Mr. McAlister's observation that plaintiff becomes restless with pain, and that plaintiff gets along well with others, yet becomes nervous and stressed. (Tr. 70.)  The ALJ determined that Mr. McAlister's opinion was not fully consistent with medical evidence and did not provide sufficient evidence to alter the RFC.  In light of this court's determination that the ALJ provided specific and legitimate reasons for partially rejecting the opinion of Dr. Whitehead and rejecting the opinions of other health care providers, it follows that the ALJ has provided a germane reason for rejecting the lay witness testimony in this instance.  See Bayliss, 427 F.3d at 1218 (the ALJ may accept lay witness testimony that is consistent with the record relating to daily activities, and may reject portions of testimony that are inconsistent with the medical record and unreliable subjective complaints); Lewis v. Apfel, 236 F.3d 503, 511-12 (9th Cir. 2001)(same).  Additionally, Mr. McAlister's statement did not describe any specific limitations which were beyond those the ALJ deemed credible in his RFC, and thus it was not error for the ALJ to discount his testimony.  Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006).  Accordingly, I find no error in the ALJ's treatment of the lay witness testimony.

////

IV.  **Plaintiff Can Perform Other Work in the National Economy**.

Plaintiff also complains that the Vocational Expert's (VE's) testimony fails to meet the Commissioner's step five burden. Plaintiff suggests that the ALJ's hypothetical was incomplete because it failed to account for all of her limitations because the ALJ improperly discounted her testimony, her physicians' opinions and the lay witness testimony.  As discussed above, I have concluded that the ALJ did not err in the fashioning of plaintiff's RFC.  Because the hypothetical posed to the VE included all of those limitations which the ALJ deemed to be credible and consistent with the medical evidence, the ALJ could reasonably rely upon the VE's testimony.  Stubbs-Danielson, 539 F.3d at 1175-76.

CONCLUSION

For the reasons stated above, the Commissioner's final decision denying benefits to plaintiff is AFFIRMED.  This action is DISMISSED.

IT IS SO ORDERED.


DATED this _1__ day of NOVEMBER, 2010.


                    _/s/  Malcolm F. Marsh_____
                    Malcolm F. Marsh
                    United States District Judge